UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOSHUA DAVID NICHOLAS,

    Petitioner,

v.

SNAKE RIVER CORRECTIONAL INSTITUTION,

    Respondent.
_____

Case No. 2:18-cv-01278-MC

OPINION AND ORDER

MCSHANE, District Judge.

Petitioner brings this Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus challenging his conviction for Felony Murder. Petitioner contends that counsel provided constitutionally deficient advice about the consequences of pleading guilty and caused him to enter an involuntary and unknowing plea. The state court rejected petitioner's claims in a decision that is entitled to deference, and the Petition is DENIED.

- 1 -   OPINION AND ORDER

BACKGROUND

On August 20, 2010, petitioner was charged by indictment with fifteen offenses, including one count of Murder, six counts of Aggravated Murder, one count of Burglary in the First Degree, one count of Robbery in the First Degree, two counts of Theft in the First Degree, two counts of Felon in Possession of a Firearm, and two counts involving the unauthorized use of a vehicle and eluding police. Resp't Ex. 102. The facts underlying the charges arose from the murder of Lori Fitzgerald, the burglary of Fitzgerald's home, and the theft of her property. Petitioner's fingerprints were found on an electrical cord used to hang Fitzgerald's body, and several individuals reported that petitioner incriminated himself in Fitzgerald's death. Resp't Ex. 105 at 10-11. During police questioning, petitioner admitted to burglarizing Fitzgerald's home and stealing her purse and firearms but denied killing her.

Petitioner and the State engaged in extensive plea negotiations and participated in two judicial settlement conferences. Consequently, petitioner agreed to plead guilty to a single count of Felony Murder and be sentenced to life imprisonment with the possibility of parole after serving a minimum of twenty-five years. Resp't Ex. 103. In exchange for his plea, the State agreed to: 1) dismiss the remaining counts; 2) refrain from referring firearms charges to the federal government; 3) file no charges arising from petitioner's recorded conversations while in custody; and 4) take no position on petitioner's release on parole after twenty-five years, provided he committed no "major misconduct" violations while incarcerated. Resp't Ex. 103; Resp't Ex. 105 at 6-8.

At the plea hearing, the court and petitioner engaged in the following colloquy:

> COURT: Alright. The Count you're pleading to is the lesser included of Count Two, which is Felony Murder.

>That has a maximum sentence of life in prison and fines totaling $375,000.00 and a minimum sentence pursuant to Ballot Measure 11 of 300 months.
>
>Is that - - so you understand the maximum possible sentence?
>
>DEFENDANT: Yeah.
>
> ***
>
>COURT: …Alright. You have an agreement with the State. And it's -- it has several aspects to it.
>
>First, you're pleading to the lesser included offense in Count Two of Felony Murder.
>
>In exchange for that the State agrees to dismiss the remainder of the Counts.
>
>On that Count you'd be sentenced pursuant to Ballot Measure 11 to a life sentence with 25 year minimum with credit for time served but no other reductions because of Ballot Measure 11.
>
> ***
>
>…Further, at future, at a future parole hearing absent any major misconducts the State will take no position with regard to parole.
>
>Other than that agreement, has anyone made any threats or promises in order to get you to plead today?
>
>DEFENDANT: No.

Resp't Ex. 105 at 5-8.

The court accepted petitioner's plea as "freely, voluntarily and intelligently made" and proceeded to sentencing. Resp't Ex. 105 at 9. Before the court imposed sentence, the State explained its reasons for entering into the plea agreement:

>[DDA] MCKEY: …The Court has outlined the agreement. It's important to note that you know this was a case that the defendant was indicted on multiple Counts of, of Aggravated Murder.

- 3 -    OPINION AND ORDER

> And it was our belief that should the case go to trial that the defendant would very likely end up with a sentence of true life.
>
> And we engaged in these negotiations in good faith and feel like we have you know we have given up something in that -- in exchange for the certainty of a conviction in this case.
>
> And the, the finality of the conviction without the endless appeals and post-conviction relief that can be -- that is part and parcel to anyone of these cases that goes to trial for the sake of families on both sides of the case.
>
> That we are willing to, to agree to something less than what we believe the result would've been after trial and that is the difference between a true life sentence and life with the minimum of 25 years.
>
> Obviously, it's important that the defendant not engage in any major rules violations while he's in prison both for the sake of his appearance before the parole board but also to ensure that we remain silent at that time.

Resp't Ex. 105 at 12-13.

On behalf of the defense, one of petitioner's attorneys emphasized that "the attorneys on, on both sides of the case have been in contact regularly for two years" and that he and co-counsel "worked diligently on the case," "litigated motions," and "discussed the evidence from top to bottom." Resp't Ex. 105 at 13. Counsel stated that that "it took a lot of work" by all the parties to reach a plea agreement and the defense was "appreciative of all the efforts" and understood "what the sentence is going to be." Resp't Ex. 105 at 14.

Petitioner exercised his right of allocution, and the court imposed "a presumptive sentence pursuant to [Or. Rev. Stat.] 137.700 of life in prison with a minimum sentence of 300 months." Resp't Ex. 105 at 14-15.

Petitioner sought post-conviction relief (PCR) in the Oregon courts and alleged that his plea was not made knowingly or voluntarily and counsel provided ineffective assistance in several respects. Resp't Ex. 107. During the PCR proceedings, petitioner testified that he understood he "was pleading to a lesser-included Felony Murder and that it would be a 25-year

- 4 -    OPINION AND ORDER

sentence" but that he would "walk out" and "be free after doing, you known, 300 months." Resp't Ex. 140 at 25. Petitioner testified that no one, including his counsel, had told him that the sentence for Felony Murder was "essentially life" with "no guarantee of parole." *Id.* Petitioner further testified that he would not have pled guilty had he known his release was not guaranteed after twenty-five years. Resp't Ex. 140 at 26. On cross-examination, petitioner conceded counsel informed him that, depending on his behavior in prison, the State would not "fight" petitioner when he went "before the Board after 25 years…seeking release." Resp't Ex. 140 at 29, 38-39. Petitioner also acknowledged that, aside from acquittal, the most favorable result he could have obtained after trial was a sentence of life with the possibility of parole after thirty years. Resp't Ex. 140 at 27-29.

The PCR court denied relief, finding petitioner "not credible" in light of the record and that his "plea was knowing and voluntary." Resp't Ex. 141 at 2. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 144-146.

On July 18, 2018, petitioner sought federal habeas relief in this action.

## DISCUSSION

Petitioner raises four Grounds for Relief in his Petition. Ground One challenges the voluntariness of his plea, Grounds Two and Three allege the ineffective assistance of counsel, and Ground Four alleges trial court error. Pet. at 5-10 (ECF No. 2). Respondent argues that petitioner failed to present most of Ground Two, Ground Three, and Ground Four to the Oregon courts and those claims are unexhausted and procedurally barred. *See* 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Petitioner does not dispute respondent's contention or present argument in support of these claims. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (habeas petitioner bears the burden of proving claims); *Davis v. Woodford*, 384 F.3d 628,

637-38 (9th Cir. 2004) (accord). Accordingly, habeas relief is denied on these unexhausted and unargued grounds.

In Ground One and the exhausted portion of Ground Two, petitioner claims that his plea was not knowing or voluntary because counsel misadvised him about the plea agreement and led him to believe his release on parole was guaranteed after twenty-five years of incarceration. Respondent maintains that the PCR court's rejection of these claims is entitled to deference.

A federal court may not grant habeas relief regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *see Penry v. Johnson*, 532 U.S. 782, 793 (2001) ("even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable"). To meet this highly deferential standard, a petitioner must demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The right to the effective assistance of counsel extends to "the plea-bargaining process" and the decision whether to accept or reject a plea offer. *Lafler v. Cooper*, 566 U.S. 156, 162

(2012) ("During plea negotiations defendants are entitled to the 'effective assistance of competent counsel.'"); *Missouri v. Frye*, 566 U.S. 134, 144-45 (2012). Accordingly, a petitioner may challenge the voluntariness of a guilty plea on grounds that counsel's constitutionally deficient performance resulted in prejudice. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984) (a claim for ineffective assistance requires showing that "counsel's performance was deficient" and the "deficient performance prejudiced the defense"). To establish a prejudice in this context, petitioner must show that "the outcome of the plea process would have been different" – that he would have insisted on going to trial – but for counsel's deficient advice. *Hill*, 474 U.S. at 59; *Lafler*, 566 U.S. at 163.

      The PCR court rejected petitioner's claims and found that petitioner was "not credible in claiming that he understood that release after 25 years was automatic." Resp't Ex. 141 at 2. Instead, the PCR court found that petitioner "was properly advised he would be eligible to seek release from prison after he had served the 300 month minimum sentence" and "was never told that he would be release[d] automatically after that period." *Id.* The PCR court noted that petitioner consulted with independent counsel during the plea negotiations and obtained "a remarkable plea agreement in view of the circumstances" by avoiding "a possible death sentence or life sentence without the possibility of parole." *Id.* The record supports the reasonableness of the PCR court's findings.

      Petitioner's plea agreement expressly provided that he would receive a "presumptive life sentence" with a minimum sentence of "300 months." Resp't Ex. 103 at 1. During petitioner's change-of-plea proceeding, the court recited the terms of the plea agreement, including the State's concession that "at a future parole hearing absent any major misconducts the State will take no position with regard to parole." Resp't Ex. 105 at 8. This concession was also referenced

by the deputy district attorney, who stated, "Obviously, it's important that the defendant not engage in any major rules violations while he's in prison *both for the sake of his appearance before the parole board but also to ensure that we remain silent at that time*." Resp't Ex. 105 at 13 (emphasis added). The court and the State made clear, in petitioner's presence, that the State could oppose petitioner's release on parole if he committed major rule violations while incarcerated. This record supports the PCR court's finding that petitioner could not have reasonably understood the agreement to guarantee his release on parole.

Counsel's PCR deposition similarly supports the PCR court's findings. Counsel testified that he thoroughly advised petitioner about the consequences of pleading guilty:

> I told him that felony murder carried a sentence of life imprisonment without the possibility of parole for a minimum of 25 years. That it did not mean he would be released after 25 years, but that it just carried the possibility of parole. That in order to secure release he would have to convince the parole board unanimously that he was capable of rehabilitation within a reasonable period of time. And that failing that, they could flop him or deny him that opportunity, in which case he would have to continue with his effort. They could do that for anywhere from 2 to 10 years depending on what they found.
>
> ***
>
> [W]e told him it was important that he be on his best behavior, which would put him in a better position to be released. One of the things we negotiated with the State as you may note from the Petition and the history, is what would be the State's position after 25 years. We attempted to secure a recommendation from the State, an affirmative recommendation, that he be released after 25 years. The State was unwilling to do that and unwilling to bind any successor DA to that. But they were willing to say, we will take no position regarding your release after 25 years provided that Mr. Nicholas has no major misconducts on his record. Now -- so it was explained to Mr. Nicholas that with that concession by the State, his chances for release after 25 years were greater, at least in my mind, than if the State came in after 25 years and started taking position against his release.

Resp. Ex. 133 at 13-15. Counsel's testimony is consistent with the plea agreement and the statements made in open court, and petitioner conceded he was advised about the State's position. Resp't Ex. 140 at 29.

- 8 -   OPINION AND ORDER

Petitioner nonetheless argues that the PCR court unreasonably applied federal law by focusing on the benefits of the plea agreement rather than the "voluntariness" of his plea and the specific advice given by counsel. Pet'r Brief at 20, 22-23. Petitioner also contends that the PCR court "overlooked" the lack of documentary evidence confirming that petitioner's counsel adequately advised him about the potential for release on parole. *Id.* at 23. I am not persuaded.

The PCR court expressly found that petitioner was not credible and was "properly advised" about the possibility of parole after twenty-five years. Resp't Ex. 141 at 2. This Court must defer to the PCR court's credibility determination. *See Sophanthavong v. Palmateer,* 378 F.3d 859, 867 (9th Cir. 2004) ("Here, because the state court conducted an evidentiary hearing in which [the petitioner] testified, we are required to defer to the state court's credibility findings."). Further, as explained above, the testimony of counsel, the statements made in petitioner's presence during sentencing, and the extensive plea negotiations support the PCR court's finding that petitioner understood he was not guaranteed release after twenty-five years.

Accordingly, petitioner fails to show that any deficiency by counsel rendered his plea involuntary, and he is not entitled to habeas relief.

## CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED and this case is DISMISSED. A Certificate of Appealability is DENIED on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 12th day of May, 2022.

                                                         s/ Michael J. McShane
                                                         MICHAEL J. MCSHANE
                                                         United States District Judge